IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| BTL INDUSTRIES, INC., a Delaware corporation<br><br>                               Plaintiff,<br><br>                               v.<br><br>PULSE PERFORMANCE, LLC; PULSE PERFORMANCE FRANCHISING, LLC; PULSE PERFORMANCE ARBOR TRAILS, LLC; and, JOHN DAVID BUSCH<br><br>                           Defendants. | Case No. 1:23-cv-301<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff BTL Industries, Inc. ("BTL"), by its attorneys, for its Complaint against Pulse Performance, LLC, ("Pulse Performance"), Pulse Performance Franchising, LLC ("Pulse Franchising"), Pulse Performance Arbor Trails, LLC ("Pulse Arbor"), and John David Busch ("Busch") (collectively "Defendants"), alleges as follows:

### NATURE OF THIS ACTION

1.     This is a civil action by BTL arising out of Defendants' patent infringement in violation of the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.*; and trademark infringement, unfair competition, false designation of origin, and false advertising under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a).

2.     BTL and its affiliates pioneered the application of high-intensity, focused electromagnetic technology in non-invasive aesthetic body-contouring devices. In June 2018, BTL launched the ground-breaking EMSCULPT® aesthetic body-contouring device that uses this technology in the United States, after the device was cleared by the U.S. Food and Drug

1

Administration (FDA). BTL and its affiliates protected the EMSCULPT device—and the technology used in the device—with numerous patents, federally registered trademarks, and copyrights.

3.      On information and belief, in August 2022, BTL discovered that Defendants were using, offering for sale, selling, or encouraging others to use knockoff EMSCULPT devices under the name EMS SCULPT and infringing BTL's trademarks to do so. On information and belief, after reviewing Defendants' social media accounts, BTL surmised that Defendants began this conduct as of at least December 2021. A representative photo of Defendants' knockoff EMS SCULPT device is depicted below:



4.      On information and belief, the above photo was posted on Defendant Pulse Franchising's Instagram account on December 18, 2021, along with the hashtag #EMSlim among others. Defendant Pulse Franchising's December 18, 2021 Instagram post also stated that the EMS SCULPT device and related services could be a "technology-driven experiences like no other at Pulse Performance," thereby directing customers to the entity Pulse Performance. In

addition to advertising and promoting the EMS SCULPT device as shown above, Defendant

Pulse Franchising, on information and belief, actively encourages third parties to enter into

franchising relationships with Defendants, to advertise and sell Defendants' EMS SCULPT

devices and related services. For example, a post on Pulse Franchising's Instagram account,

dated July 2, 2022, states "What's new and exciting in franchising? Visit ww.franchisewire.com

to check out @pulseperformancefranchsing and its EMS Sculpt services."

     5.      On information and belief, as of at least June 2022, Defendant Pulse Arbor began

using, offering for sale, selling, or encouraging others to use knockoff EMS SCULPT devices

and services using BTL's EMSCULPT trademarks and confusingly similar variations of BTL's

EMSCULPT trademarks. For example, a post from Defendant Pulse Arbor's Instagram account,

dated June 7, 2022, advertises and promotes the EMS SCULPT device and uses the hashtags

#emssculpt, #emsculpt, #emslim, #emsculptaustin, and #emsculptaustintx. The post describes the

EMS SCULPT device as "[t]he ultimate way to increase muscle, burn fat and tone targeted areas

such as abs, glutes, arms and thighs." On information and belief, on November 5, 2022,

Defendant Pulse Arbor again posted an advertisement on its Instagram and Facebook accounts

for the infringing EMS SCULPT device, representing to customers that they can "target and tone

Abs, Glutes, Arms and Thighs with our incomparable EMS Sculpt." Defendant Pulse Arbor

directed interested customers to book online at pulseperformancestudio.com, along with the

hashtags #emssculpt and #emssculpting.

     6.      Pulse Arbor also advertises services that it performs with the EMS SCULPT

device. Specifically, Pulse Arbor's webpage encourages visitors to schedule an "intro session"

with the EMS SCULPT device. (https://www.pulseperformancestudio.com/ems-training). It also

directs visitors to a link, where Pulse Arbor advertises "8 Sculpt Treatments for $1500."
(pulseperformancestudio.com/ems-sculpt).

7.      On information and belief, on July 1 2022, Defendant Pulse Performance began
using, offering for sale, selling, or encouraging others to use the knockoff EMS SCULPT devices
and services, using the EMS SCULPT mark. Ex. A. On its website, Defendant Pulse
Performance advertised that the EMS SCULPT device offers "a targeted high intensity
electromagnetic energy therapy that is used for body sculpting" and that "[t]he concentrated
electromagnetic field may permeate through all layers of skin and fat to activate all four layers of
muscle contraction." Ex. B. A representative photo of the EMS SCULPT device offered by
Defendant Pulse Performance is depicted below:



8.      Defendant Pulse Performance's website also uses BTL's HIFEM mark in
connection with its advertising of its infringing EMS SCULPT device and associated services.
Ex. B. On information and belief, the website also falsely states that "Pulse Performance's EMS
Sculpt is FDA approved to treat your abdomen, glutes, arms, calves, and thighs." *Id.*
Additionally, Defendant Pulse Performance's website, on information and belief, falsely asserts

that the EMS SCULPT device and associated services have "Results Backed by Science," which include "30% Average Fat Reduction" and a "25% Average Increase In Muscle Mass." Ex. B.

9.      On information and belief, Defendant Pulse Performance also advertised its infringing EMS SCULPT device and associated services on Groupon, describing EMS SCULPT as "a targeted high intensity electromagnetic energy therapy that is used for body sculpting," that "burns fat while also building muscle," and that the "[t]he concentrated electromagnetic field may permeate through all layers of skin and fat to activate all four layers of muscle contraction."

10.     On information and belief, Defendants Pulse Performance, Pulse Franchising, Pulse Arbor, and Busch act in concert to use, promote, offer for sale, and sell, the infringing EMS SCULPT device and associated services. For instance, on information and belief, Pulse Performance, Pulse Franchising, and Pulse Arbor share the same physical address of 1901 Ranch Road 620 N Lakeway, Texas, 78734-2613. In addition, on information and belief, all three entities were founded by and are currently managed by Defendant Busch.

11.     On information and belief, on or around July 1, 2022, Mr. Busch gave an interview to FranchiseWire for an article about Pulse Performance. During that interview, Mr. Busch stated that, with the EMS SCULPT device, "clients can see a noticeable difference after eight 30-minute treatments and it has been shown to increase muscle mass by 25% and reduce fat by 30%."  Ex. A. Additionally, the article stated the EMS Sculpt device was "a star attraction for clients," that the "EMS SCULPT harnesses the energies of both radio frequency and magnetic vibration, directing low-voltage electrical impulses deep into layers of muscle and fat" and that the "radio frequency releases heat to burn fat." *Id.*

12.     BTL informed Defendant Pulse Performance by letter on November 2, 2022, that the use and sale of the EMS SCULPT device and associated services infringed BTL's patents,

and requested that Defendant Pulse Performance cease use of the marks EMS SCULPT, EMSCULPT, EMSLIM, EMSSCULPTING, HIFEM, and EMSSCULPT, all of which are identical or confusingly similar to BTL's federally registered EMSCULPT and HIFEM marks. John David Busch responded, but refused to comply with any of BTL's demands, and Defendants continue to use the EMS SCULPT, EMSCULPT, EMSLIM, EMSSCULPTING, EMSSCULPT and HIFEM marks to advertise and promote their EMS SCULPT devices.

13.     On information and belief, and for the same reasons stated in paragraphs 56-61 of this Complaint, Defendant Busch is the moving, conscious, and active force behind the infringing conduct of Defendants Pulse Performance, Pulse Arbor, and Pulse Franchising. For example, in an article on the Pulse Performance website, Busch described electrical muscle stimulation as something "I wanted to share with the world" and that he "saw tremendous opportunity to build a franchise around it." (https://www.franchisewire.com/why-jd-busch-wants-to-tell-the-world-about-the-pulse-performance-franchise-opportunity/). And in an article on PRNEWSWIRE about Pulse Performance, Busch is described as the Founder and "Chief Energy Officer" of that entity. Ex. C. Furthermore, on information and belief, Busch is the sole founder of Defendants Pulse Performance, Pulse Franchising, and Pulse Arbor, and he has been and continues to be the sole CEO and/or managing director of each of these entities. Thus, on information and belief, Busch is the moving, conscious, and active force behind Defendants' choice of marks, including EMS SCULPT, EMSLIM, EMSSCULPTING, EMSSCULPT, and HIFEM, which Defendants use in connection with the advertising and promotion of the infringing EMS SCULPT devices and related services.

14.     As of the filing of this Complaint, Defendants infringe BTL's patents directed to body-contouring methods and devices by importing, using, offering for sale, or selling the EMS

SCULPT devices, services relating to those devices, and components relating to those devices. Defendants also advertise and promote the EMS SCULPT device and related services (1) by improperly using the EMS SCULPT, EMSCULPT, EMSLIM, EMSSCULPTING, EMSSCULPT, and HIFEM marks in their promotional and informational materials (2) by using the research findings from BTL sponsored clinical studies that demonstrate the safety and efficacy of BTL's EMSCULPT device; and (3) by using misleading statements that the EMS SCULPT device is FDA cleared.

## PARTIES

15.     BTL is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 362 Elm Street, Marlborough, Massachusetts 01752.

16.     On information and belief, Pulse Performance LLC is a limited liability company organized and existing under the laws of the State of Texas with a registered address at 1901 Ranch Road 620N #28, Austin, TX 78734.

17.     On information and belief, Pulse Performance Arbor Trails, LLC is a limited liability company organized and existing under the laws of the State of Texas with a registered address at 1901 Ranch Road 620N #28, Austin, TX 78734.

18.      On information and belief, Pulse Performance Franchising, LLC is a limited liability company organized and existing under the laws of the State of Texas with a registered address at 1901 Ranch Road 620N #28, Austin, TX 78734.

19.     On information and belief, John David Busch is a private individual residing in this District, and he is the sole founder and the sole CEO and/or managing director of Pulse Performance, Pulse Franchising, and Pulse Arbor.

## JURISDICTION AND VENUE

20.     This Court has subject-matter jurisdiction over BTL's claims arising under the patent laws of the United States, 35 U.S.C. §§ 100, *et seq.* and the Lanham Act, 15 U.S.C. §§ 1051, 1121, pursuant to 28 U.S.C. §§ 1331, 1332, and 1338(a)-(b).

21.     This Court has personal jurisdiction over Defendants because Defendants have committed within this District acts of patent infringement under 35 U.S.C. § 271(a), (b), or (c), acts of trademark infringement, unfair competition, false designation of origin, and false advertising under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a)), and intend a future course of such conduct in this District. Defendants purposefully direct the use, offers for sale, and sale of the infringing EMS SCULPT devices and associated infringing services related to these devices, knowing they will be sold and/or used in the State of Texas and in this District, and has continued to make, use, and offer for sale the infringing devices and infringing services in the State of Texas and in the Western District of Texas. Further, the Defendants sell and offer for sale the infringing EMS SCULPT device and associated infringing services using the BTL Trademarks and confusingly similar variations thereof. These acts have led and will lead to foreseeable harm and injury to BTL in the State of Texas and in the Western District of Texas.

22.     On information and belief, Defendants have derived, and will continue to derive, substantial revenue from the use and sale of the EMS SCULPT devices and related services related to that device, in the State of Texas and in this District.

23.     Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400 at least because Defendants are residents of this District, have committed acts of infringement in this District, have a regular and established place of business in this District, and are subject to personal jurisdiction in this District.

## BACKGROUND

24.    BTL specializes in the innovation, development, and sale of equipment and treatments for the aesthetics industry in the United States. BTL and its affiliates developed proprietary technology that uses high-intensity electromagnetic stimulation to tone and strengthen muscles in targeted areas. BTL applied its technology to develop a series of new and innovative FDA-cleared devices and developed protocols for using the technology for aesthetic therapies. As described above, BTL denotes its products and services that feature this technology with its EMSCULPT brand and other trademarks.

25.    The first such device that BTL developed was the EMSCULPT® device (shown below), a standalone, non-invasive, aesthetic body-contouring device. *See*, Ex. D. BTL's patent-protected EMSCULPT device uses high-intensity electromagnetic energy to induce powerful muscle contractions in a patient. BTL has developed specifically configured EMSCULPT applicators, tailoring each type of applicator to a specific target area.



26.    The EMSCULPT device uses innovative and patent-protected protocols for aesthetic therapies. BTL's proprietary protocols create repetitive muscle contractions that result in a non-invasive method of toning muscle and body sculpting. https://bodybybtl.com/solutions/emsculpt-neo/.

27.    In June 2018, BTL received clearance from the FDA for its EMSCULPT device with large applicators and began to sell the device in the United States for the improvement of abdominal tone, strengthening of the abdominal muscles, development of firmer abdomen, and for strengthening, toning, and firming buttocks and thighs. https://bodybybtl.com/solutions/emsculpt-neo/. In October 2018, BTL received FDA clearance for an additional indication for the improvement of muscle tone and firmness and for strengthening muscles in arms. *Id.* In July 2019, BTL received FDA clearance for the

EMSCULPT device with both large and small applicators for the improvement of abdominal tone, strengthening of abdominal muscles, development of firmer abdomen, strengthening, toning, and firming of buttocks, thighs, and calves, as well as improvement of muscle tone and firmness, for strengthening muscles in arms. *Id.* The smaller applicators are intended for smaller treatment areas.

28.     BTL markets and distributes its non-invasive aesthetic body-contouring EMSCULPT device to healthcare professionals, and BTL licenses these healthcare professionals to provide the associated treatment services administered via authentic EMSCULPT devices that incorporate its proprietary technology, muscle toning protocols, and applicators in the United States.

29.     BTL's EMSCULPT device created a new market in which it quickly became the innovative industry leader. Before BTL launched the EMSCULPT device in 2018, no other product used high-intensity electromagnetic technology to tone and firm muscle for non-invasive aesthetic body contouring. Prior devices in the aesthetics market used different technology to reduce fat or treat cellulite. BTL continues to market and distribute the EMSCULPT device throughout the United States and has continued to innovate in the non-invasive body contouring industry by designing and launching its EMSCULPT NEO device.

30.     The aesthetic industry has recognized BTL's innovation, hailing it as having taken "the aesthetics industry by storm," praising BTL as being the first to apply high-intensity electromagnetic energy for aesthetics; and lauding the EMSCULPT device as having "transformed treatment protocols." Ex. D. Patients recognized EMSCULPT treatments as one of the 2019 "Most Worth It Surgical and Nonsurgical Aesthetic Procedures." Ex. E. The

EMSCULPT device has been described as "[o]ne of the newest and most progressive body-shaping technologies" on the market. Ex. F.

31.    BTL's market success and superior performance are by-products of its technological innovations over the past several decades. BTL continues to implement these innovations today. BTL has protected its investment into its innovations and its brand with patents, trademarks, and copyrights. BTL lists the patents that cover its products on its website at www.btlnet.com/patents.

### A.    The Asserted Patents

32.    On November 19, 2019, the United States Patent and Trademark Office (USPTO) duly and lawfully issued U.S. Patent No. 10,478,634 (the "'634 patent"), entitled "Aesthetic Method of Biological Structure Treatment by Magnetic Field." A true and correct copy of the '634 patent is attached hereto as Exhibit G. The '634 patent was exclusively licensed to BTL, and BTL possesses the exclusive right of recovery for any past, present, or future infringements of the '634 patent, including equitable relief and damages.

33.    On June 30, 2020, the United States Patent and Trademark Office (USPTO) duly and lawfully issued U.S. Patent No. 10,695,575 (the "'575 patent"), entitled "Aesthetic Method of Biological Structure Treatment by Magnetic Field." A true and correct copy of the '575 patent is attached hereto as Exhibit H. The '575 patent was exclusively licensed to BTL, and BTL possesses the exclusive right of recovery for any past, present, or future infringements of the '575 patent, including equitable relief and damages.

34.    On March 8, 2022, the USPTO duly and lawfully issued U.S. Patent No. 11,266,852 (the "'852 patent"), entitled "Aesthetic Method of Biological Structure Treatment by Magnetic Field." A true and correct copy of the '852 patent is attached hereto as Exhibit I. The '852 patent was exclusively licensed to BTL, and BTL possesses the exclusive right of recovery

for any past, present, or future infringements of the '852 patent, including equitable relief and damages.

35.      On May 2, 2017, the United States Patent and Trademark Office (USPTO) duly and lawfully issued U.S. Patent No. 9,636,519 (the "'519 patent"), entitled "Magnetic Stimulation Methods and Devices for Therapeutic Treatments." A true and correct copy of the '519 patent is attached hereto as Exhibit J. The '519 patent was exclusively licensed to BTL, and BTL possesses the exclusive right of recovery for any past, present, or future infringements of the '519 patent, including equitable relief and damages.

36.      On March 24, 2020, the USPTO duly and lawfully issued U.S. Patent No. 10,596,386 (the "'386 patent"), entitled "Aesthetic Method of Biological Structure Treatment by Magnetic Field." A true and correct copy of the '386 patent is attached to this Complaint as Exhibit K. The '386 patent was exclusively licensed to BTL, and BTL possesses the exclusive right of recovery for any past, present, or future infringement of the '386 patent, including equitable relief and damages.

**B.      BTL's Trademarks**

37.      BTL uses and licenses registered and unregistered trademarks and trade dress to market its aesthetic equipment and treatments in the United States, including the following federally registered marks:

| Reg. No. | Mark | Reg. Date | First Use in Commerce or Priority Date | Goods / Services |
|---|---|---|---|---|
| 5,688,619 | **HIFEM** | Mar. 5, 2019 | Sept. 19, 2017 | Class 10: Medical and aesthetic apparatus and instruments generating electromagnetic, magnetic, electrical, mechanical, radiofrequency or thermal |

| | | | | energy for use in skin treatment procedures; medical apparatus and instruments for body toning and body shaping; medical apparatus and instruments for the removal of fat, circumference reduction, tightening of skin, reduction of wrinkles, reduction of scars, reduction of stretch marks, rejuvenation of skin, treatment of pigmentation spots, increase in muscle volume, increase in number of muscle fibres and increase in muscle tonus; medical apparatus and instruments for the treatment of cellulite; therapeutic facial masks; facial toning machines for cosmetic use; electric stimulation and magnetic stimulation apparatus for physical therapy purposes for the treatment of nerve and muscle pain and elimination of muscular spasms; gynecological and urological apparatus and instruments, namely for genital rejuvenation, treatment sexual dysfunction, gynecological treatment and pelvic floor treatment.<br><br>Class 44: Medical services; medical equipment rental; cosmetic and plastic surgery; beauty salons; liposuction services; medical removal of body cellulite. |
|---|---|---|---|---|
| 5,572,801 | **EMSCULPT** | Oct. 2, 2018 | Sept. 29, 2017 | Class 10: Medical apparatus and instruments for the treatment of cellulite; medical apparatus and instruments for body toning and body shaping; medical apparatus and instruments for the removal of fat, circumference reduction, tightening of skin, reduction of wrinkles, reduction of scars, reduction of stretch marks, rejuvenation of skin, and treatment of pigmentation spots; above medical apparatuses with exception for the treatment of the nasopharynxs including inhalers and nasal irrigators; |

| | | | | |
|---|---|---|---|---|
| | | | | massage apparatus; medical apparatus and instruments for aesthetic skin treatment procedures; medical apparatus generating electromagnetic, magnetic, electrical, mechanical or thermal energy for use in skin treatment procedures; medical apparatus particularly apparatus for pain management, elimination of muscle spasms; gynaecological and urological apparatus and instruments, namely, for genital rejuvenation, treatment sexual dysfunction, gynecological treatment and pelvic floor treatment |
| 6,069,279 | **EMSCULPT** | Jun. 2, 2020 | Sept. 29, 2017 | Class 44: medical services; gynecology services; medical equipment rental; cosmetic and plastic surgery; beauty salons; liposuction services; removal of body cellulite |

38.     BTL has continuously and exclusively used the EMSCULPT and HIFEM trademarks (the "BTL Trademarks") and has never abandoned them. The BTL Trademarks are federally registered in the United States and are in full force and effect. True and correct "status" copies of the EMSCULPT and HIFEM trademark registrations, obtained from the Trademark Status Document Retrieval ("TSDR") database of the United States Patent and Trademark Office, are attached to this Complaint as Exhibit L. These registrations constitute prima facie evidence of the validity of the BTL Trademarks, and BTL's exclusive right to use the BTL Trademarks under 15 U.S.C. § 1057(b).

39.     The BTL Trademarks therefore perform an important source-identifying function for BTL's aesthetic body-countering devices like the EMSCULPT and associated treatment services. The BTL Trademarks signify to purchasers that the body-contouring devices come from BTL, and the associated body-contouring services are rendered by BTL's devices and

administered by BTL-trained and BTL-authorized service providers. The BTL Trademarks are inherently distinctive and are associated with BTL's innovative aesthetic body-contouring devices that have acquired considerable brand loyalty through BTL's sales and promotion, and direct word-of-mouth promotion by consumers. In addition, BTL has expended significant time, money, and resources in developing, marketing, advertising, promotion, and selling its products and services under its trademarks, including the BTL Trademarks, in the United States. The market reputation and consumer goodwill associated with the BTL Trademarks are of significant value to BTL.

**C.** **Defendants' Unlawful Conduct**

40.     On information and belief, Defendants have known of BTL, the Asserted Patents, BTL's EMSCULPT device, and BTL's Trademarks since at least November 2, 2022, when BTL sent Defendant Pulse Performance a cease and desist letter.

41.     On information and belief, in 2021, Defendants began competing with BTL in the non-invasive body-contouring industry by marketing and promoting knock-off, non-invasive body-contouring devices, services relating to these devices, and components relating to these devices. These devices utilize electromagnetic waves to generate muscle contractions and infringe BTL's patents. Specifically, Defendants used and encouraged others to use Defendants' knockoff EMS SCULPT devices, which, on information and belief, "harness[] the energies of both radio frequency and magnetic vibration, directing low-voltage electrical impulses deep into layers of muscle and fat" Ex. A. example, on information and belief, Defendant Pulse Performance operates the website (reproduced in part below) associated with the domain name pulseperformancestudio.com, where Defendant Pulse Performance advertises and promotes the EMS SCULPT device and associated services together with the EMS SCULPT mark:

# EMS SCULPT

### Shape your body with the power of Pulse.

BOOK YOUR FREE INTRO SESSION

## MORE RESULTS IN LESS TIME

Pulse Performance uses the newest and most advanced Sculpt technology. EMS Sculpt is a targeted high intensity electromagnetic energy therapy that is used for body sculpting. This cutting-edge non-invasive body sculpting device burns fat while also building muscle. The concentrated electromagnetic field may permeate through all layers of skin and fat to activate all four layers of muscle contraction.

https://www.pulseperformancestudio.com/ems-sculpt

42.    Additionally, Defendant Pulse Performance, on its website, encourages others to become franchisees and use the EMS SCULPT device. For example, on its website, Defendant Pulse Performance advertises to potential franchisees that a "Pulse Performance is a studio like no other: EMS Technology is combined with a comprehensive holistic cycle of nutritional guidance, 3D Body Scans, EMS SCULPT" (emphasis added) and that Pulse Partners receive hands-on business coaching and personalized support from the Pulse Performance corporate team." *See* https://www.pulseperformancestudio.com/own-a-pulseperformance.

43.    In addition to Defendant Pulse Performance's website, Defendants advertise and promote the EMS SCULPT device and services on several websites. For example, Defendant Pulse Franchising promotes the EMS SCULPT device and associated service on Instagram, as

described in paragraph 4 above. Similarly, Defendant Pulse Arbor advertises the EMS SCULPT device and associated services on Instagram and Facebook, as described in paragraph 5 above. Both Defendants Pulse Franchising and Pulse Arbor direct potential customers to its sister company, Defendant Pulse Performance, for the EMS SCULPT device, the device's associated services, and for potential franchise opportunities.

44.     On information and belief, Defendants' EMS SCULPT device includes or performs each and every limitation of at least one claim of the Asserted Patents, either literally or under the doctrine of equivalents. *See infra* ¶¶ 63-147. By importing, using, offering to sell, selling, and encouraging others to use the EMS SCULPT devices, Defendants have induced others to infringe as well as directly infringed, and continue to induce infringement and directly infringe, literally or by doctrine of equivalents, one or more claims of the Asserted Patents under 35 U.S.C. § 271(a).

45.     On information and belief, Defendants actively encourage, promote, distribute, provide instruction for, and support the use of the EMS SCULPT device by its franchise customers or employees in a manner that directly infringes, either literally or under the doctrine of equivalents, one or more claims of the Asserted Patents under 35 U.S.C. § 271(b), knowing and intending that Defendants' customers and employees will commit acts in such a manner as to directly infringe the Asserted Patents. *See id.*

46.     Additionally, Defendants use, offer for sale, sell, and encourage others to use EMS SCULPT devices and associated services while using numerous marks and social media hashtags designed to create a false association or impression that the EMS SCULPT device as affiliated with BTL, including via use of the EMS SCULPT mark, which is nearly identical and confusingly similar to EMSCULPT. As stated earlier, Defendants Pulse Franchising and Pulse

Arbor market their products and services via Instagram and Facebook in connection with the EMS SCULPT mark, and also liberally use the hashtags #emssculpt, #emsculpt, #emslim, #emsculptaustin, #emsculptaustintx, and #Emslim.

47.     The EMS SCULPT, EMSSCULPTING, and EMSSCULPT marks are confusingly similar to BTL's EMSCULPT marks. The marks differ only by an extra letter "S" and are otherwise identical or nearly identical in appearance, pronunciation, meaning, and commercial impression. The marks also identify competing products.

48.     Similarly, the EMSLIM mark is confusingly similar to BTL's EMSCULPT marks. The marks share the identical EM prefix, coupled with the term SLIM—a synonym for the term SCULPT in BTL's EMSCULPT mark. As a result, the EMSLIM mark is virtually identical to EMSCULPT in overall meaning and commercial impression. Moreover, Defendants use the EMSLIM mark to advertise and promote non-invasive body-contouring devices and services that compete with BTL's Emsculpt devices and services infringe BTL's patents.

49.     Defendants continue to use the confusingly similar EMS SCULPT, EMSCULPT, EMSLIM, EMSSCULPTING, and EMSSCULPT marks across multiple online locations to advertise, promote, sell, and encourage others to use the infringing EMS SCULPT device and associated services. For example, as discussed earlier in the Complaint, Defendants continue to use the confusingly similar EMS SCULPT mark alongside the HIFEM mark to promote their devices and services on the website pulseperformancestudio.com, *see supra* ¶¶ 8, 12, and the Instagram and Facebook accounts associated with Defendants Pulse Franchising and Pulse Arbor, *see supra* ¶¶ 4-5.

50.     Defendants also have marketed and promoted, and continue to market and promote, the EMS SCULPT device and associated services with research findings from BTL-

sponsored clinical studies (the "BTL Studies"). For example, Defendants reference and discuss the results of clinical studies[1] that were sponsored by BTL and evaluated the efficacy and safety of using BTL's EMSCULPT NEO device to increase muscle mass and decrease fat. *See* Ex. A. The BTL Studies reported, among other things, that BTL's EMSCULPT NEO device, which uses BTL's proprietary technology, increased muscle mass by 25% on average and decreased fat by 30% on average after four 30-minute treatments. *See, e.g.*, Goldberg et al. Defendant Busch, for example, referenced these BTL clinical results in an interview. *See* Ex. A.

51.     On information and belief, Defendants never sponsored or conducted any research or testing of their own to establish that the EMS SCULPT device and associated services produce patient results equivalent to those provided by BTL's EMSCULPT NEO device and reported in the BTL Studies. Defendants never requested from BTL, nor did BTL give, permission for Defendants to use the BTL Studies in connection with their promotion or advertising of the EMS SCULPT device and associated services. By promoting the EMS SCULPT device and associated services as capable of achieving clinical results identical to those reported with BTL's EMSCULPT device, Defendants continue to misrepresent the quality of these devices and services and do so in a manner that has and will likely cause interested consumers to confuse these devices and services with BTL and BTL's EMSCULPT device.

52.     Defendants have and continue to intentionally and willfully, and without BTL's consent, market and promote the infringing EMS SCULPT devices and related services with BTL's proprietary photographs (the "BTL Photos"). For example, on June 7, 2022, Pulse Arbor made the following post on its Instagram page:

---

[1] David J. Goldberg et al., *The role and clinical benefits of high-intensity focused electromagnetic devices for non-invasive lipolysis and beyond: A narrative review and position paper*, J. Cosmet Dermatol. 1-6 (2021).



53.     These are marketing photos (reproduced below) that BTL owns and uses to advertise and promote its EMSCULPT device:



54.     Defendants never requested from BTL, nor did BTL give, permission for Defendants to use the BTL Photos to market and promote the infringing EMS SCULPT devices

and related services. By using BTL-owned promotional photos, which depict the BTL

EMSCULPT device, to market and promote the infringing EMS SCULPT devices and related

services, Defendants continue to misrepresent the quality of these devices and do so in a manner

that has and will likely cause interested consumers to confuse these devices with BTL and BTL's

EMSCULPT device.

55.    Defendant Pulse Performance also misrepresents the quality of the EMS SCULPT

device and associated services by asserting that the EMS SCULPT device and associated

services are FDA approved. On information and belief, Defendants' EMS SCULPT device and

associated services are not FDA approved.

56.    On information and belief, Defendant Busch has been and continues to be the

moving, conscious, and active force behind the infringing conduct of Defendants Pulse

Performance, Pulse Franchising, and Pulse Arbor. For instance, on information and belief, Busch

is the sole founder of Defendants Pulse Performance, Pulse Franchising, and Pulse Arbor.

Further, on information and belief, Busch has been and continues to be the sole CEO and/or

managing director of each of these entities.

57.    On information and belief, Busch, as the sole founder—as well as the sole CEO

and/or managing director—of Pulse Performance, Pulse Franchising, and Pulse Arbor, is and has

been the individual possessing sole decision-making authority to enter into wholesale purchase

agreements on behalf of these entities. Thus, on information and belief, Busch has and continues

to, on behalf of these entities, enter into wholesale purchase agreements with third-parties for the

importation of the infringing EMS SCULPT devices into the United States.

58.    On information and belief, Busch, as the sole founder—as well as the sole CEO

and/or managing director—of Pulse Performance, Pulse Franchising, and Pulse Arbor, is and has

been the individual possessing sole decision-making authority to enter into franchising

agreements with third-parties. Thus, on information and belief, Busch has and continues to, on

behalf of Pulse Performance, Pulse Franchising, and Pulse Arbor, enter into franchising

agreements with third-parties for the sale and advertising of the infringing EMS SCULPT

devices and related services.

59.     On information and belief, Busch, as the sole founder—as well as the sole CEO

and/or managing director—of Pulse Performance, Pulse Franchising, and Pulse Arbor, is and has

been the individual possessing sole decision-making authority over the content of these entities'

promotional materials for the infringing EMS SCULPT devices and related services. As alleged

in this Complaint, many of these materials use BTL's trademarks and confusingly similar

variations of BTL's trademarks to advertise and promote the infringing EMS SCULPT devices

and related services. Thus, on information and belief, Busch, as the individual with sole decision-

making authority over the content of these materials—and in his capacity as the sole founder

and/or managing director of Pulse Performance, Pulse Franchising, and Pulse Arbor—has

personally approved or directed these entities to use BTL's trademarks, and confusingly similar

variations of BTL's trademarks, to advertise and promote the infringing EMS SCULPT devices

and related services.

60.     On information and belief, Busch, as the sole founder—as well as the sole CEO

and/or managing director—of Pulse Performance, Pulse Franchising, and Pulse Arbor, is and has

been the individual possessing sole decision-making authority over the content of these entities'

promotional materials for the infringing EMS SCULPT devices and related services for the same

reasons stated in paragraph 59. As alleged in this Complaint, many of these materials use BTL-

owned promotional photos and BTL-sponsored clinical studies to advertise and promote the

infringing EMS SCULPT devices and related services. Thus, on information and belief, Busch, as the individual with sole decision-making authority over the content of these materials—and in his capacity as the sole founder and/or managing director of Pulse Performance, Pulse Franchising, and Pulse Arbor—has personally approved or directed these entities to use BTL-owned promotional photos and BTL-sponsored clinical studies to advertise and promote the infringing EMS SCULPT devices and related services.

61.     On information and belief, Busch has and continues to willfully and maliciously serve as the active, conscious, and moving force behind Defendants' infringing conduct—not least because Busch, for the reasons stated in paragraph 152 of this Complaint, has had constructive knowledge of BTL's Trademarks since at least the dates the registrations for each of these trademarks issued, and has, despite this knowledge, personally approved of or directed Defendants to use, without BTL's permission, BTL's Trademarks, and confusingly similar variations of BTL's Trademarks, in connection with the advertising and promotion of the Accused Devices

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 11,266,852

62.     BTL repeats and re-alleges paragraphs 1-61 as if fully set forth herein.

63.     The '852 patent is directed towards methods and devices for treating a patient using time-varying magnetic fields. Exemplary Claim 9 of the '852 patent recites:

A treatment device for enhancing a visual appearance of a patient, the treatment device comprising:

a first magnetic field generating coil and a second magnetic field generating coil, wherein both of the first and second magnetic field generating coils are planar;

a first applicator, wherein the first applicator comprises the first magnetic field generating coil,

24

wherein the first magnetic field generating coil is configured to generate a first time-varying magnetic field with a repetition rate in a range of 1 Hz to 300 Hz and a magnetic flux density in a range of 0.1 Tesla to 7 Tesla on a surface of the first magnetic field generating coil,

wherein the second magnetic field generating coil is configured to generate a second time-varying magnetic field with a repetition rate in a range of 1 Hz to 300 Hz and a magnetic flux density in a range of 0.1 Tesla to 7 Tesla on a surface of the second magnetic field generating coil,

wherein the first magnetic field generating coil is configured to generate the first time-varying magnetic field independently of the second time-varying magnetic field,

wherein each of the first and the second magnetic field generating coils is configured to generate a plurality of pulses,

wherein each of the plurality of pulses comprises a first plurality of pulses having a first repetition rate and a second plurality of pulses having a second repetition rate, wherein the first repetition rate differs from the second repetition rate,

wherein each pulse comprises an impulse,

wherein each pulse lasts for a time period lasting from a beginning of a first impulse of the time-varying magnetic field to a beginning of a next consecutive impulse of the time-varying magnetic field,

wherein the first and the second magnetic field generating coils are configured to be placed proximate to a body region of the patient such that the first and the second time-varying magnetic fields are each applied to the body region to cause a

contraction of at least one muscle in the body region to enhance the visual

appearance of the patient, and

wherein the body region comprises one of a buttocks or an abdomen.

64.     On information and belief, Defendants' EMS SCULPT device is a knockoff of

BTL's EMSCULPT device, and Defendants' device is purchased on various e-commerce

platforms. *See, e.g.*, Ex. M.

65.     On information and belief, Defendants' EMS SCULPT device includes or

performs each and every limitation of at least claim 9 of the '852 patent, either literally or under

the doctrine of equivalents.

66.     Defendants' EMS SCULPT device includes the preamble of claim 9 of the '852

patent, which recites "[a] treatment device for enhancing a visual appearance of a patient."

Defendants' own marketing and informational materials for their EMS SCULPT represent that

the devices "burns fat while also building muscle" and "directly stimulates motor neurons, so

that the body's muscles continue to expand and contract … [that] cannot be achieved by your

usual exercise. Ex. B.

67.     Defendants' EMS SCULPT device includes the claimed element "a first magnetic

field generating coil and a second magnetic field generating coil, wherein both of the first and

second magnetic field generating coils are planar." Online marketing and promotional materials

for the EMS SCULPT device represent the device "harnesses the energies of both radio

frequency and magnetic vibration, directing low-voltage electrical impulses deep into layers of

muscle and fat." Ex. A. The figures on the Defendant's website also include the flat applicator

which needs to include a flat coil. Ex. B. Defendants' website also represents that the EMS

SCULPT device comes with at least two applicators. Ex. B. On information and belief, these handles are applicators that house magnetic field generating coils having an inductance.

68.     Defendants' EMS SCULPT device includes the claimed element "a first applicator, wherein the first applicator comprises the first magnetic field generating coil" for the same reasons stated in paragraph 67. Moreover, online marketing and promotional materials for the EMS SCULPT device represent that the device includes at least two applicators that "uses the most advanced (HIFEM) high-intensity focused magnetic vibration technology." Ex. B.

69.     On information and belief, Defendants' EMS SCULPT device includes the claimed element "wherein the first magnetic field generating coil is configured to generate a first time-varying magnetic field with a repetition rate in a range of 1 Hz to 300 Hz and a magnetic flux density in a range of 0.1 Tesla to 7 Tesla on a surface of the first magnetic field generating coil." Online marketing and promotional materials for the EMS SCULPT device represent that the device "uses the most advanced (HIFEM) high intensity focused magnetic vibration technology" which produces an "energy pulse of a 30 minute treatment can stimulate 30,000 strong muscle contractions." Ex. B. On information and belief, discovery will confirm that the EMS SCULPT device generates a repetition rate in a range of 1 Hz to 300 Hz and a magnetic flux density in a range of 0.1 Tesla to 7 Tesla.

70.     Defendants' EMS SCULPT device includes the claimed element "wherein the second magnetic field generating coil is configured to generate a second time-varying magnetic field with a repetition rate in a range of 1 Hz to 300 Hz and a magnetic flux density in a range of 0.1 Tesla to 7 Tesla on a surface of the second magnetic field generating coil" for the same reasons stated in paragraph 69.

71.     Defendants' EMS SCULPT device includes the claimed element "wherein the first magnetic field generating coil is configured to generate the first time-varying magnetic field independently of the second time-varying magnetic field." Online marketing and promotional materials and images for the EMS SCULPT device represent that the device's two applicators can operate independently of each other or at the same time. Ex. B.

72.     Defendants' EMS SCULPT device includes the claimed element "wherein each of the first and the second magnetic field generating coils is configured to generate a plurality of pulses" for the same reasons stated in paragraphs 69 and 71.

73.     Defendants' EMS SCULPT device includes the claimed element "wherein each of the plurality of pulses comprises a first plurality of pulses having a first repetition rate and a second plurality of pulses having a second repetition rate, wherein the first repetition rate differs from the second repetition rate" for the same reasons stated in paragraph 71. On information and belief, Defendants' EMS SCULPT devices are configured to generate magnetic pulses at several different frequencies depending on the treatment parameters. Online marketing and promotional materials represent that the EMS SCULPT device can "treat your abdomen, glutes, arms, calves, and thighs." Ex. B. On information and belief, discovery will confirm that the EMS SCULPT device comprises the claimed element wherein each of the plurality of pulses comprises a first plurality of pulses having a first repetition rate and a second plurality of pulses having a second repetition rate, wherein the first repetition rate differs from the second repetition rate."

74.     Defendants' EMS SCULPT device includes the claimed element "wherein each pulse comprises an impulse." On information and belief, Defendants' EMS SCULPT device generates a plurality of magnetic pulses that contract the muscles of a targeted body region, which is followed by a period for recharging the energy. Online marketing and promotional

material represent that the EMS SCULPT device deliver an "energy pulse…[that] can stimulate 30,000 strong muscle contractions." On information and belief, discovery will show that Defendants' EMS SCULPT device is similarly configured to allow providing pulses for a period of time. Ex. B.

75.     Defendants' EMS SCULPT device includes the claimed element "wherein each pulse lasts for a time period lasting from a beginning of a first impulse of the time-varying magnetic field to a beginning of a next consecutive impulse of the time-varying magnetic field" for the same reasons stated in paragraph 69.

76.     Defendants' EMS SCULPT device includes the claimed element "wherein the first and the second magnetic field generating coils are configured to be placed proximate to a body region of the patient such that the first and the second time-varying magnetic fields are each applied to the body region to cause a contraction of at least one muscle in the body region to enhance the visual appearance of the patient." Online marketing and promotional images for the EMS SCULPT device depict the device's applicators as positioned proximate to various body regions, such as the "abdomen, glutes, arms, calves, and thighs." Ex. B. Online marketing and promotional materials represent that the EMS SCULPT device "can stimulate 30,000 strong muscle contractions." Ex. B.

77.     Defendants' EMS SCULPT device include the claimed element "wherein the body region comprises one of a buttocks or an abdomen." Online marketing and promotional images for the EMS SCULPT device depict the device's applicators as positioned proximate to various body regions, such as the "abdomen, glutes, arms, calves, and thighs." Ex. B.

78.     By using, offering to sell, selling, and importing into the United States Defendants' EMS SCULPT device, Defendants directly infringe, either literally or under the doctrine of equivalents, at least claim 9 of the '852 patent.

79.     Defendants' direct infringement of the '852 patent has been, and continues to be, willful. Counsel for BTL wrote Defendant Pulse Performance November 2, 2022 informing Pulse Performance that its use of the EMS SCULPT device infringed BTL's patents and referred him to www.btlnet.com/patents, which began listing the '852 patent shortly after its issuance. On information and belief, Defendants have been aware of the '852 patent since before the filing of this Complaint and have infringed the '852 patent willfully and deliberately and with knowledge that such conduct violates 35 U.S.C. § 271. Defendants' decision to infringe BTL's patents was willful and malicious within the meaning of 11 U.S.C. § 523(a)(6).

80.     Defendants' infringement of the '852 patent has damaged, and continues to damage, BTL in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that BTL would have made but for Defendants' infringing acts as provided by 35 U.S.C. § 284.

81.     BTL will suffer irreparable harm unless Defendants are enjoined from infringing the '852 patent.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 10,695,575

82.     BTL repeats and re-alleges paragraphs 1-61 as if fully set forth herein.

83.     The '575 patent is directed toward methods for toning muscles in a patient using time-varying magnetic fields. Exemplary Claim 1 of the patent recites:

A method for toning muscles of a patient, comprising:

positioning a first applicator on the patient, the first applicator housing a first magnetic field generating coil having an inductance;

independently positioning a second applicator on the patient, the second applicator

housing a second magnetic field generating coil having the same inductance as the

first magnetic field generating coil;

charging a first energy storage device and a second energy storage device;

discharging the first energy storage device to the first magnetic field generating coil such

that a first impulse of a first time-varying magnetic field is generated;

discharging the second energy storage device to the second magnetic field generating coil

such that a first impulse of a second time-varying magnetic field is generated,

wherein the first impulse of the first time-varying magnetic field and the first impulse of

the second time-varying magnetic field each have a magnetic flux density in a

range between 0.1 Tesla and 7 Tesla, and wherein the first impulse of the first

time-varying magnetic field and the first impulse of the second time-varying

magnetic field each have an impulse duration in a range between 3 μs and 3 ms;

establishing a first pulse duration beginning at the beginning of the first impulse

generated by the first magnetic field generating coil and ending at the beginning

of a second impulse generated by the first magnetic field generating coil, wherein

the first impulse generated by the second magnetic field generating coil is

generated during the first pulse duration;

cooling each of the first and the second magnetic field generating coils; and

applying a first plurality of impulses generated by the first magnetic field generating coil

and applying a second plurality of impulses generated by the second magnetic

field generating coil, to muscle fibers, neuromuscular plates, or nerves innervating

muscle fibers in a body region of the patient to cause muscles of the body region to contract such that the muscles are toned.

84.     On information and belief, Defendants' EMS SCULPT device is a knockoff of BTL's EMSCULPT device.

85.     Defendants have performed and continue to perform each and every limitation of at least claim 1 of the '575 patent, either literally or under the doctrine of equivalents.

86.     Defendants have performed and continue to perform the preamble of claim 1 of the '575 patent, which recites "a method for toning muscles of a patient." Defendants' own marketing and informational materials for their EMS SCULPT represent that the devices are "a targeted high intensity electromagnetic energy therapy that is used for body sculpting" and that using these devices can "build[] muscle." Ex. B.

87.     Defendants have performed and continue to perform the claimed step of "positioning a first applicator on the patient, the first applicator housing a first magnetic field generating coil having an inductance." Defendants' EMS SCULPT device includes at least one applicator that houses a magnetic field generating coil an inductance for the same reasons stated in paragraphs 67-69. On information and belief, as part of its EMS SCULPT services, Defendants position the applicators of Defendants' EMS SCULPT device on a patient for the same reasons stated in paragraph 109.

88.     Defendants have performed and continue to perform the claimed step of "independently positioning a second applicator on the patient, the second applicator housing a second magnetic field generating coil having the same inductance as the first magnetic field generating coil" for the same reasons stated in paragraph 87.

89.     Defendants have performed and continue to perform the claimed step of "charging a first energy storage device and a second energy storage device." On information and belief, a reasonable opportunity for further investigation or discovery will show that the first and second applicators of the Defendants' EMS SCULPT device requires separate energy storage devices to generate their respective electromagnetic fields, and that these storage devices must be charged prior to transferring energy to their corresponding applicators. Online marketing and promotional materials and images for the EMS SCULPT device represent that the device's two applicators can operate independently of each other or at the same time. Ex. B.

90.     Defendants have performed and continue to perform the claimed step of "discharging the first energy storage device to the first magnetic field generating coil such that a first impulse of a first time-varying magnetic field is generated." On information and belief, Defendants' EMS SCULPT device includes a first energy storage device for the same reasons stated in paragraphs 67-69 and 89. On information and belief, Defendants' EMS SCULPT device discharges energy from this storage device to one of the device's applicators, which generates a time-varying magnetic field for the same reasons stated in paragraphs 66-68.

91.     Defendants have performed and continue to perform the claimed step of "discharging the second energy storage device to the second magnetic field generating coil such that a first impulse of a second time-varying magnetic field is generated" for the same reasons stated in paragraph 90.

92.     Defendants have performed and continue to perform the claimed step "wherein the first impulse of the first time-varying magnetic field and the first impulse of the second time-varying magnetic field each have a magnetic flux density in a range between 0.1 Tesla and 7 Tesla, and wherein the first impulse of the first time-varying magnetic field and the first impulse

of the second time-varying magnetic field each have an impulse duration in a range between 3 µs and 3 ms" for the same reasons stated in paragraph 140.

93.     Defendants have performed and continue to perform the claimed step of "establishing a first pulse duration beginning at the beginning of the first impulse generated by the first magnetic field generating coil and ending at the beginning of a second impulse generated by the first magnetic field generating coil, wherein the first impulse generated by the second magnetic field generating coil is generated during the first pulse duration" for the same reasons stated in paragraph 71.

94.     Defendants have performed and continue to perform the claimed step of "cooling each of the first and the second magnetic field generating coils." Online promotional materials and images for the EMS SCULPT device similarly represent that the device's applicators include vents that are indicative of fluid cooling. Ex. B. On information and belief, a reasonable opportunity for further investigation and discovery will confirm that the EMS SCULPT device includes the claimed step of "cooling each of the first and second magnetic field generating coils."

95.     Defendants have performed and continue to perform the claimed step of "applying a first plurality of impulses generated by the first magnetic field generating coil and applying a second plurality of impulses generated by the second magnetic field generating coil, to muscle fibers, neuromuscular plates, or nerves innervating muscle fibers in a body region of the patient to cause muscles of the body region to contract such that the muscles are toned" for the same reasons stated in paragraph 69.

96.     On information and belief, Defendants encourage, promote, and instruct customers to perform the claimed steps of at least claim 1 of the '575 patent described above. On

information and belief, a reasonable opportunity for further investigation and discovery will show that Defendants distribute user manuals and other informational materials to customers who purchase the EMS SCULPT device, and that these informational materials encourage, promote, and instruct customers to perform the claimed steps of at least claim 1 of the '575 patent described above.

97.     By using, offering to sell, selling, and importing into the United States Defendants' EMS SCULPT device, Defendants directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '575 patent.

98.     By using, offering to sell, selling, and importing into the United States Defendants' EMS SCULPT device, and by encouraging customers to start a franchise to use these device in a manner that directly infringes at least claim 1 of the '575 patent, Defendants induce direct infringement, literally or under the doctrine of equivalents, of at least claim 1 of the '575 patent.

99.     On information and belief, Defendants were aware of the '575 patent since before the filing of this Complaint. On information and belief, Defendants have known that their EMS SCULPT devices are designed for a use that infringes one or more claims of the '575 patent, and that these devices lack any substantial non-infringing uses. On information and belief, Defendants have, and will continue to, intentionally encourage acts of direct infringement with knowledge of the '575 patent and knowledge that its acts are encouraging infringement.

100.    Defendants' infringement of the '575 patent has been, and continues to be, willful. Counsel for BTL wrote Defendant Pulse Performance November 2, 2022 informing Pulse Performance that its use of the EMS SCULPT device infringed BTL's patents and referred him to www.btlnet.com/patents, which began listing the '575 patent shortly after its issuance. On

information and belief, Defendants have been aware of the '575 patent since before the filing of this Complaint and have infringed the '575 patent willfully and deliberately and with knowledge that such conduct violates 35 U.S.C. § 271. Defendants' decision to infringe BTL's patents was willful and malicious within the meaning of 11 U.S.C. § 523(a)(6).

101.    Defendants' infringement of the '575 patent has damaged, and continues to damage, BTL in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that BTL would have made but for Defendants' infringing acts as provided by 35 U.S.C. § 284.

102.    BTL will suffer irreparable harm unless Defendants are enjoined from infringing the '575 patent.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 10,478,634

103.    BTL repeats and re-alleges paragraphs 1-61 as if fully set forth herein.

104.    The '634 patent is directed towards a method for toning muscles in a patient using time-varying magnetic fields. Exemplary Claim 1 of the patent recites:

A method for toning muscles in a patient using time-varying magnetic fields, the method comprising:

placing a first applicator comprising a magnetic field generating coil in contact with a patient's skin or clothing at a body region of the patient, wherein the body region is an abdomen or a buttock;

coupling the first applicator to the patient with an adjustable flexible belt so that the belt holds the first applicator to the patient's skin or clothing;

providing energy to the magnetic field generating coil in order to generate a time-varying magnetic field; and

applying a magnetic fluence of 50 T cm$^2$ to 1,500 T cm$^2$ to the body region,

wherein the time-varying magnetic field is applied to the body region with a magnetic

flux density sufficient to cause a muscle contraction in the body region.

105.    On information and belief, Defendants' EMS Device is a knockoff of BTL's EMSCULPT device.

106.    Defendants have performed and continue to perform each and every limitation of at least claim 1 of the '634 patent, either literally or under the doctrine of equivalents.

107.    Defendants have performed and continue to perform the preamble of claim 1 of the '634 patent, which recites "A method for toning muscles in a patient using time-varying magnetic fields," for the same reasons stated in paragraph 79.

108.    Defendants have performed and continue to perform the claimed step of "placing a first applicator comprising a magnetic field generating coil in contact with a patient's skin or clothing at a body region of the patient, wherein the body region is an abdomen or a buttock" for the same reasons stated in paragraph 109.

109.    Defendants have performed and continue to perform the claimed step of "coupling the first applicator to the patient with an adjustable flexible belt so that the belt holds the first applicator to the patient's skin or clothing." Promotional materials and images for the EMS SCULPT device include several images showing an applicator with an adjustable belt to hold the applicator to a patient's skin or clothing. Ex. B.

110.    Defendants have performed and continue to perform the claimed step of "providing energy to the magnetic field generating coil in order to generate a time-varying magnetic field" for the same reasons stated in paragraph 67.

111.    Defendants have performed and continue to perform the claimed step of "applying a magnetic fluence of 50 T cm$^2$ to 1,500 T cm$^2$ to the body region." On information

and belief, a reasonable opportunity for further investigation or discovery will show that Defendants' EMS SCULPT device generates and delivers magnetic fields that vary in area density depending on the treatment parameters.

112.    Defendants have performed and continue to perform the claimed step of "wherein the time-varying magnetic field is applied to the body region with a magnetic flux density sufficient to cause a muscle contraction in the body region" for the same reasons stated in paragraph 69.

113.    By using, offering to sell, selling, and importing into the United States Defendants' EMS SCULPT device, Defendants directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '634 patent.

114.    By using, offering to sell, selling, and importing into the United States Defendants' EMS SCULPT device, and by encouraging customers to become franchise owners using these devices in a manner that directly infringes at least claim 1 of the '634 patent, Defendants have induced infringement and continue to induce direct infringement, literally or under the doctrine of equivalents, of at least claim 1 of the '634 patent. On information and belief, a reasonable opportunity for further investigation and discovery will also show that Defendants distribute user manuals and other informational materials to customers who purchase the EMS SCULPT device, and that these informational materials encourage, promote, and instruct customers to perform the claimed steps of at least claim 1 of the '634 patent described above. Thus, on information and belief, Defendants induce infringement of the '634 patent by encouraging, promoting, and instructing customers to perform the claimed steps of at least claim 1 of the '634 patent described above.

115.     Defendants' infringement of the '634 patent has been, and continues to be, willful. Counsel for BTL wrote Defendant Pulse Performance November 2, 2022 informing Pulse Performance that its use of the EMS SCULPT device infringed BTL's patents and referred him to www.btlnet.com/patents, which began listing the '634 patent shortly after its issuance. On information and belief, Defendants have been aware of the '634 patent since before the filing of this Complaint and have infringed the '634 patent willfully and deliberately and with knowledge that such conduct violates 35 U.S.C. § 271. Defendants' decision to infringe BTL's patents was willful and malicious within the meaning of 11 U.S.C. § 523(a)(6).

116.     Defendants' infringement of the '634 patent has damaged, and continues to damage, BTL in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that BTL would have made but for Defendants' infringing acts as provided by 35 U.S.C. § 284.

117.     BTL will suffer irreparable harm unless Defendants are enjoined from infringing the '634 patent.

### COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 9,636,519

118.     BTL repeats and re-alleges paragraphs 1-61 as if fully set forth herein.

119.     The '519 patent is directed towards a device for producing a time varying magnetic field for treatment. Exemplary Claim 1 of the '519 patent recites:

> A magnetic stimulation device producing a time varying magnetic field for treatment, comprising:
>
> a connection to an energy source, a switch, a coil, an energy storage device, at least one blower and a casing;
>
> with the blower arranged on a circumference of the coil; and

wherein the coil and the casing are arranged in a manner that fluid can flow in-between them and wherein the coil is cooled by fluid flow over at least upper and lower sides of the coil.

120.    On information and belief, Defendants' EMS SCULPT device is a knockoff of BTL's EMSCULPT device.

121.    Defendants' EMS SCULPT device includes the preamble of claim 1 of the '519 patent, which recites "A magnetic stimulation device producing a time varying magnetic field for treatment" for the same reasons stated in paragraph 66.

122.    Defendants' EMS SCULPT device includes the claimed element "a connection to an energy source." On information and belief, a reasonable opportunity for further investigation or discovery will show that Defendants' EMS SCULPT device requires a connection to an energy source to generate magnetic fields.

123.    Defendants' EMS SCULPT device includes the claimed element "a switch." On information and belief, a reasonable opportunity for further investigation or discovery will show that Defendants' EMS SCULPT device requires a power switching mechanism to generate magnetic fields.

124.    Defendants' EMS SCULPT device includes the claimed element "a coil" for the same reasons stated in paragraph 67.

125.    Defendants' EMS SCULPT device includes the claimed element "an energy storage device" for the same reasons stated in paragraph 89.

126.    Defendants' EMS SCULPT device includes the claimed element "at least one blower." On information and belief, a reasonable opportunity for further investigation and

discovery will show that the applicators of the EMS SCULPT device include ventilation holes, which, on information and belief, ventilate air that is being circulated by at least one blower.

127.    Defendants' EMS SCULPT device includes the claimed element "a casing." As illustrated by the photo below, the bodies of the EMS SCULPT's applicators include a plastic shell. On information and belief, a reasonable opportunity for further investigation and discovery will show that the shells of the applicators for the EMS SCULPT device function as casing units for one or more blowers within the applicator of that device.:



https://www.pulseperformancestudio.com/ems-sculpt

128.    Defendants' EMS SCULPT device includes the claimed element "with the blower arranged on a circumference of the coil." On information and belief, a reasonable opportunity for further investigation or discovery will show that at least one of the blowers within the applicators of the EMS SCULPT device is arranged on the circumference of the coil within that applicator, and circulates air in-between the coil and the casing of the applicator, thereby cooling the coil by fluid flow over at least the upper and lower sides of the coil.

129.     Defendants' EMS SCULPT device includes the claimed element "wherein the coil and the casing are arranged in a manner that fluid can flow in-between them and wherein the coil is cooled by fluid flow over at least upper and lower sides of the coil" for the same reasons stated in paragraph 128.

130.     By using, offering to sell, selling, and importing into the United States Defendants' EMS SCULPT device, Defendants directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '519 patent.

131.     Defendants' infringement of the '519 patent has been, and continues to be, willful. Counsel for BTL wrote Defendant Pulse Performance November 2, 2022 informing Pulse Performance that its use of the EMS SCULPT device infringed BTL's patents and referred him to www.btlnet.com/patents, which began listing the '519 patent shortly after its issuance. On information and belief, Defendants have been aware of the '519 patent since before the filing of this Complaint and have infringed the '519 patent willfully and deliberately and with knowledge that such conduct violates 35 U.S.C. § 271. Defendants' decision to infringe BTL's patents was willful and malicious within the meaning of 11 U.S.C. § 523(a)(6).

132.     Defendants' infringement of the '519 patent has damaged, and continues to damage, BTL in an amount yet to be determined, of at least a reasonable royalty and/or lost profits that BTL would have made but for Defendants' infringing acts as provided by 35 U.S.C. § 284.

133.     BTL will suffer irreparable harm unless Defendants are enjoined from infringing the '519 patent.

**COUNT V: INFRINGEMENT OF U.S. PATENT NO. 10,596,386**

134.     BTL repeats and re-alleges paragraphs 1-61 as if fully set forth herein.

135.    The '386 patent is directed towards methods and devices for treating patients with time varying magnetic fields. Exemplary Claim 12 of the '386 patent recites:

A treatment device for toning at least one muscle of a patient using a time-varying magnetic field, the treatment device comprising:

an applicator configured to be held in contact with a body region of the patient with a belt, the applicator housing a magnetic field generating device within a casing;

an energy storage device;

means for discharging energy from the energy storage device to the magnetic field generating device such that impulses of the time-varying magnetic field are generated, the time-varying magnetic field having a biphasic shape with a repetition rate in between 1 Hz and 700 Hz, an impulse duration between 3 μs to 10000 μs, and a maximal value of a magnetic flux derivative between 2.5 kT/s to 150 kT/s; and

means for cooling the magnetic field generating device by a fluid cooling media,

wherein the belt is configured to aid in positioning the applicator in order to apply the time-varying magnetic field with at least motor-threshold magnetic flux density to a peripheral neural system innervating the at least one muscle of the patient in order to repetitively contract the at least one muscle within the body region such that the at least one muscle is toned, the body region comprising one of the buttocks or abdomen.

136.    The Defendants' EMS SCULPT device includes or performs each and every limitation of at least claim 12 of the '386 patent, either literally or under the doctrine of equivalents.

137.    The EMS SCULPT device includes the preamble of claim 12 of the '386 patent, which recites "A treatment device for toning at least one muscle of a patient using a time-varying magnetic field, the treatment device" for the same reasons stated in paragraph 66.

138.    The EMS SCULPT device includes the claimed element "an applicator configured to be held in contact with a body region of the patient with a belt, the applicator housing a magnetic field generating device within a casing" for the same reasons stated in paragraph 109.

139.    The EMS SCULPT device includes the claimed element "an energy storage device" for the same reasons stated in paragraph 89.

140.    The EMS SCULPT device includes the claimed element "means for discharging energy from the energy storage device to the magnetic field generating device such that impulses of the time-varying magnetic field are generated, the time-varying magnetic field having a biphasic shape with a repetition rate in between 1 Hz and 700 Hz, an impulse duration between 3 μs to 10000 μs, and a maximal value of a magnetic flux derivative between 2.5 kT/s to 150 kT/s." The EMS SCULPT device generates 30,000 contractions in 30 minutes. Ex. B. On information and belief, achieving this number of muscle contractions in a 30-minute session means it is likely that the applicators for these devices generate impulses that last between 3 μs to 10000 μs. On information and belief, a reasonable opportunity for further investigation or discovery will show that the EMS SCULPT device is configured to generate impulses having a biphasic shape with a repetition rate in between 1 Hz and 700 Hz and a maximal value of a magnetic flux derivative between 2.5 kT/s to 150 kT/s.

141.    The EMS SCULPT device includes the claimed element "means for cooling the magnetic field generating device by a fluid cooling media" for the same reasons stated in paragraph 128.

142.    The EMS SCULPT device includes the claimed element "wherein the belt is configured to aid in positioning the applicator in order to apply the time-varying magnetic field with at least motor-threshold magnetic flux density to a peripheral neural system innervating the at least one muscle of the patient in order to repetitively contract the at least one muscle within the body region such that the at least one muscle is toned, the body region comprising one of the buttocks or abdomen" for the same reasons stated in paragraph 76.

143.    By using, offering to sell, selling, and importing into the United States the EMS SCULPT device, the Defendants have and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '386 patent.

144.    The Defendants' direct infringement of the '386 patent has been and continues to be willful. On information and belief, the Defendants have been aware of the '386 patent since before the filing of this Complaint and has infringed the '386 patent willfully and deliberately and with knowledge that such conduct violates 35 U.S.C. § 271. Counsel for BTL wrote Defendant Pulse Performance November 2, 2022 informing Pulse Performance that its use of the EMS SCULPT device infringed BTL's patents and referred him to www.btlnet.com/patents, which began listing the '386 patent shortly after its issuance. Defendants' decision to infringe BTL's patents was willful and malicious within the meaning of 11 U.S.C. § 523(a)(6).

145.    The Defendant's infringement of the '386 patent has damaged, and continues to damage, BTL in an amount yet to be determined, of at least a reasonably royalty and/or lost

profits that BTL would have made but for the Defendants' infringing acts as provided by 35 U.S.C. § 284.

146.    BTL will suffer irreparable harm unless the Defendants are enjoined from infringing the '386 patent.

## COUNT VI: TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114

147.    BTL repeats and re-alleges paragraphs 1-61 as if fully set forth herein.

148.    BTL owns exclusive rights to the BTL Trademarks in the United States. The United States trademark registrations for the EMSCULPT and HIFEM trademarks are in full force and effect.

149.    Defendants, without BTL's permission or consent, have used and continue to use the BTL Trademarks and confusingly similar variations of these trademarks in connection with their advertising, promotion, sale, and offer for sale of Defendants' EMS SCULPT device and associated services.

150.    On information and belief, Defendants' unauthorized use of the BTL Trademarks and confusingly similar variations of these trademarks to advertise, promote, use, sell, and offer for sale Defendants' EMS SCULPT device and services caused and is likely to cause confusion, mistake, and deception among the public as to the origin and quality of Defendants' EMS SCULPT device and services, their affiliation, connection, or association with BTL; and their sponsorship or approval by BTL. As set out in paragraphs 4 and 8, for example, Defendants have used the HIFEM and EMSLIM marks in their online promotion and marketing of the EMS SCULPT device and services. Additionally, as set out in paragraph 46, for example, Defendants have used the EMS SCULPT, EMSSCULPT, EMSCULPT, EMSSCULPTING, EMSLIM, EMSCULPTAUSTIN, and EMSCULPTAUSTINTX marks in hashtag format in multiple Instagram posts that promote Defendants' EMS SCULPT device and services. This has and is

likely to cause the public to associate Defendants' EMS SCULPT device and services with BTL and BTL's EMSCULPT device.

151.    On information and belief, Defendants' unauthorized use of the confusingly similar EMS SCULPT, EMSSCULPT, EMSSCULPTING, EMSLIM, EMSCULPTAUSTIN, and EMSCULPTAUSTINTX marks, along with the unauthorized use of the HIFEM and EMSCULPT marks to advertise, promote, sell, and offer for sale Defendants' EMS SCULPT device and services has caused and is likely to cause confusion, mistake, and deception among the public as to the origin and quality of Defendants' EMS SCULPT device and services; their affiliation, connection, or association with BTL; and their sponsorship or approval by BTL.

152.    On information and belief, Defendants have had knowledge of BTL's rights in the BTL Trademarks since at least the November 2, 2022 letter from BTL's counsel informing Pulse Performance that its use of the EMSLIM, and HIFEM marks infringed BTL's rights in the BTL Trademarks. Furthermore, Defendants have had constructive knowledge of BTL's rights in (1) the EMSCULPT trademarks since at least October 2, 2018, and June 20, 2020 and (2) the HIFEM trademark since at least March 5, 2019, which are, respectively, the dates the registrations for these marks first issued to BTL. 15 U.S.C. § 1072.

153.    The knowing and intentional nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. § 1117(a). Defendants' decision to infringe BTL's patents was willful and malicious within the meaning of 11 U.S.C. § 523(a)(6).

154.    Defendants' trademark infringement has damaged, and continues to damage, BTL in an amount yet to be determined, but of at least the profits that Defendants have made as a result of their infringement, plus the cost of this action. Defendants' trademark infringement is the direct and proximate cause of BTL's damages.

155.    BTL is entitled to an injunction restraining Defendants, their officers, agents, and employees, and all persons acting in concert with Defendants, from engaging in any further such acts in violation of federal trademark law.

## COUNT VII: FEDERAL UNFAIR COMPETITION

156.    BTL repeats and re-alleges paragraphs 1-61 as if fully set forth herein.

157.    Defendants have, without BTL's permission or consent, intentionally and willfully used the BTL Trademarks and confusingly similar variations of these trademarks and the BTL Studies to promote, market, offer for sale, and sell Defendants' EMS SCULPT device services.

158.    Defendants' unauthorized, intentional, and willful use of the BTL Trademarks and the confusingly similar variations of these trademarks to promote, market, offer for sale, and sell Defendants' EMS SCULPT device and services has and is likely to confuse, mislead, or deceive as to the origin and quality of these devices and services, their association with BTL and BTL's EMSCULPT device and related services, and the sponsorship or approval by BTL of these devices and services.

159.    Defendants' unauthorized, intentional, and willful use of the BTL Trademarks and the confusingly similar variations of these trademarks to promote, market, offer for sale, and sell Defendants' EMS SCULPT device and services misrepresents the nature, characteristics, qualities, and geographic origin of these devices and services.

160.    Defendants' false statements regarding the FDA approval status of Defendants' EMS SCULPT device, which Defendants have made in connection with their promotion, marketing, offers for sale, and sale of Defendants' EMS SCULPT device, has and is likely to confuse, mislead, or deceive as to the origin and quality of these devices and services, their

association with BTL and BTL's EMSCULPT device and related services, and the sponsorship or approval by BTL of these devices and services.

161.    Defendants' false statements regarding FDA approval of Defendants' EMS SCULPT device, which Defendants' have made in connection with their promotion, marketing, offers for sale, and sale of Defendants' EMS SCULPT device, misrepresent the nature, characteristics, qualities, and geographic origin of these devices and services.

162.    Defendants' unauthorized, intentional, and willful use of the BTL Studies to promote, market, offer for sale, and sell Defendants' EMS SCULPT device and services constitute false or misleading descriptions or representations of fact that have and are likely to confuse, mislead, or deceive as to the origin and quality of these devices and services, their association with BTL and BTL's EMSCULPT device and related services, and the sponsorship or approval by BTL of these devices and services. Defendants' decision to infringe BTL's patents was willful and malicious within the meaning of 11 U.S.C. § 523(a)(6).

163.    Defendants' unauthorized, intentional, and willful use of the BTL Studies to promote, market, offer for sale, and sell Defendants' EMS SCULPT device and services constitute false or misleading descriptions or representations of fact that misrepresent the nature, characteristics, qualities, and geographic origin of these devices and services. On information and belief, Defendants' deceptive actions have influenced and are likely to influence the consuming public's purchasing decisions. Defendants' unfair competition practices jeopardize the goodwill created by BTL.

164.    Defendants' unauthorized, intentional, and willful use of the BTL Photos to promote, market, offer for sale, and sell the infringing EMS SCULPT devices and related services has and is likely to confuse, mislead, or deceive as to the origin and quality of these

devices, their association with BTL and BTL's EMSCULPT device, and the sponsorship or approval by BTL of these devices.

165.    Defendants' unauthorized, intentional, and willful use of the BTL Photos to promote, market, offer for sale, and sell the infringing EMS SCULPT devices and related services constitutes false or misleading descriptions or representations of fact that misrepresent the nature, characteristics, qualities, and geographic origin of these devices.

166.    Defendants' unauthorized, intentional, and willful use of the BTL Trademarks and the confusingly similar variations of these trademarks, Defendants' false claims of FDA approval, and Defendants' unauthorized, intentional, and willful use of the BTL Studies and BTL Photos to promote, market, offer for sale, and sell Defendants' EMS SCULPT device and services has injured and, if permitted to continue, will continue to harm BTL's business and the goodwill associated with its brand, as well as BTL's reputation for providing high-quality and safe body-contouring aesthetic devices and procedures subject to strict quality control standards that have been cleared by the FDA.

167.    BTL has no adequate remedy at law, and if Defendants' actions are not enjoined, BTL will continue to suffer irreparable harm to its reputation and the goodwill of the BTL brand.

### PRAYER FOR RELIEF

WHEREFORE BTL requests entry of judgment against Defendants as follows:

A.    A judgment that Defendants have infringed one or more claims of the Asserted Patents in violation of 35 U.S.C. § 271(a)-(c);

B.    A judgment that Defendants have willfully infringed one or more claims of the Asserted Patents;

C.    An award of damages for infringement of the Asserted Patents, with said damages to be trebled because of the intentional and willful nature of Defendants' infringement, as

provided by 35 U.S.C. § 284;

D.      A determination that this case is "exceptional" under 35 U.S. § 285 and an award of BTL's reasonable attorneys' fees;

E.      An order permanently enjoining Defendants, their officers, directors, employees, agents, and all persons acting in concert with them, from infringing the Asserted Patents;

F.      A judgment that Defendants have violated the Lanham Act, 15 U.S.C. § 1114, by committing acts of trademark infringement;

G.      A judgment that Defendants' use of the HIFEM mark, as alleged in this Complaint, infringes BTL's HIFEM trademark;

H.      A judgment that Defendants' use of the EMSCULPT mark, as alleged in this Complaint, infringes BTL's EMSCULPT trademarks;

I.      A judgment that the EMS SCULPT, EMSSCULPT, EMSSCULPTING, EMSLIM, EMSCULPTAUSTIN, and EMSCULPTAUSTINTX marks are confusingly similar to BTL's EMSCULPT trademarks and that Defendants' use of those marks, as alleged in this Complaint, infringe BTL's EMSCULPT trademarks;

J.      A judgment that Defendants have violated the Lanham Act, 15 U.S.C. § 1125(a), by committing acts of federal unfair competition, false designation of origin, and false advertising;

K.      An award of damages for Defendants' infringement of BTL's Trademarks, including Defendants' profits, any damages sustained by BTL, and the costs of the action as provided by 15 U.S.C. § 1117(a), with said damages to be trebled because of the intentional and willful nature of Defendants' infringement, as provided by 15 U.S.C. § 1117(b);

L.      A judgment that this case is "exceptional" under 15 U.S.C. § 1117(a) and an

award of reasonable attorneys' fees;

M.      A judgment that Defendant Busch's patent infringement, trademark infringement, and Lanham Act violations were willful and malicious within the meaning of 11 U.S.C. § 523(a)(6);

N.      An award of damages against Defendants as a result of its wrongful acts against BTL in an amount to be proved at trial;

O.      An award of any and all of Defendants' profits arising from the foregoing acts;

P.      An award of pre-and post-judgment interest of any monetary damages at the highest rate allowed by law;

Q.      Permanent injunctive relief enjoining Defendants, their officers, agents, and employees, and all persons acting in concert with Defendants, from:

     i.      using the BTL Trademarks or any reproductions, copies, or confusingly similar variations thereof—including but not limited to the EMS SCULPT, EMSSCULPT, EMSSCULPTING, EMSCULPTAUSTIN, EMSCULPTAUSTINTX, and EMSLIM marks—in any manner in connection with the promotion, marketing, advertising, offering for sale, or sale of any good or service that is not a good or service offered by a genuine BTL product, or is not authorized by BTL to be offered in connection with the BTL Trademarks;

    ii.      passing off, inducing, or enabling others to sell or pass off any good or service as a good or service offered by a genuine BTL product, or any other good or service offered by BTL, that is not BTL's or not offered under the authorization, control, or supervision of BTL and approved by BTL for sale

under the BTL Trademarks;

iii.   committing any acts calculated to cause consumers to believe that Defendants'

goods or services are those sold under the authorization, control or supervision

of BTL, or are sponsored by, approved by, or otherwise connected with BTL;

and,

iv.   further infringing the BTL Trademarks and damaging BTL's goodwill.

R.   An award of BTL's costs and expenses in this action; and

S.   For such other relief as the Court may deem just and proper.

## JURY DEMAND

Under Rule 38 of the Federal Rules of Civil Procedure, Plaintiff BTL Industries, Inc.

respectfully demands a trial by jury of any issues triable of right by a jury.

Dated: March 17, 2023

*Of Counsel:*

J.C. Rozendaal (*pro hac vice* to be filed)
Chandrika Vira (*pro hac vice* to be filed)
Monica R. Talley (*pro hac vice* to be filed)
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1100 New York Ave. NW, Suite 600
Washington, DC 20005
(202) 371-2600

By: /s/ Anna G. Phillips
Anna G. Phillips
Texas State Bar No. 24090329
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1100 NEW YORK AVE. NW, SUITE 600
WASHINGTON, DC 20005
(202) 371-2600

*Attorneys for Plaintiff BTL Industries, Inc.*